NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0489n.06

No. 13-2470

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 07, 2015
DEBORAH S. HUNT, Clerk

JOSEPH VIGIL,

      Plaintiff-Appellant,

v.

REGENTS OF THE UNIVERSITY
OF MICHIGAN, et al.,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:     SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

     **CLAY, Circuit Judge.** Plaintiff Joseph Dean Vigil filed this action under 42 U.S.C. § 1983 and parallel Michigan constitutional protections to challenge his treatment and eventual dismissal in November 2007 from the doctoral program in political science at the University of Michigan.[1] Vigil's claim of disparate treatment on the basis of race during his tenure in the program was dismissed as untimely, and, pursuant to an earlier order of this Court, the case proceeded solely on his claims relating to his dismissal from the program. *Vigil v. Regents of the Univ. of Mich.*, No. 11-2075, (6th Cir. Dec. 6, 2012). Following discovery, the district court granted Defendants' motion for summary judgment. *Vigil v. Regents of the Univ. of Mich.*, 980 F. Supp. 2d 790 (E.D. Mich. 2013). Vigil timely appealed the judgment as to his procedural due process claim and his First Amendment retaliation claim. We **AFFIRM.**

---

    [1] Vigil originally asserted a variety of state law tort claims, but those were abandoned below and are not relevant to this appeal.

Vigil was admitted to the graduate program in political science at the University of Michigan and enrolled there in September 1991. He completed his coursework in 1993 and achieved candidacy for a doctoral degree in 2001. By this time, Vigil was conducting his graduate work long-distance while teaching as an adjunct in Colorado. The department voted on December 14, 2000 to require doctoral candidates to complete and successfully defend their dissertations within six years from the date of candidacy.

In 2003, Vigil formed a committee of four members to oversee his dissertation research, as required by department policy. Vigil's research concerned sex-workers and First Amendment protections, and his committee included scholars in First Amendment law, women's studies, and political science. By 2004, Vigil's dissertation efforts had run into serious trouble. In April of that year, the chair of his committee reported that the committee had developed "serious reservations" about the work Vigil submitted. (R. 43-1, April 2004 Letter, PageID 624.) One of the committee members left the committee after being denied tenure. In the fall of 2004, Vigil tried with increasing frustration and no success to convince his dissertation chair to support his request for an exemption that would allow him to defend the dissertation before a three-person committee, contrary to department practice. Finally, in December 2004, Vigil was able to recruit a women's studies professor to serve as the fourth person on his committee.

Vigil fared no better once the full draft was submitted to the committee. In a series of emails, his chair and committee members informed him that "no one on the committee" thought his "draft [was] defensible, and no one [saw] any plausible revising strategies for turning it into a defensible draft," (R. 43-1, Emails, PageID 635-36), that the empirical work was fatally flawed, that the writing voiced "unsupported sentiments or opinions," and that it failed to appropriately engage with the scholarly literature (*id.* at 636-37). After Vigil submitted planned revisions in

November 2005, his committee chair informed him that his dissertation did not meet scholarly standards because, among other reasons, his position remained "a complete nonstarter on first amendment grounds," and on that basis resigned from the committee. (R. 36-6, Faculty Emails, PageID 440.) Over the following months, Vigil's other committee members reiterated their views that, *inter alia*, "the basic research question, design, execution, and conclusion of the work [were] flawed," (*id.* at 441), his writing did not fairly represent the positions held by others, and his empirical work was "unrelated . . . to the doctrinal and historical framework of his thesis" (*id.* at 445). By March 2006, Vigil had been informed by every academic advisor on his committee that his work did not meet the standards for doctoral work at the University of Michigan. Vigil does not appear to have taken any action after March 2006 to pursue his degree. More than a year and a half later, in November 2007, the University of Michigan sent Vigil a letter dismissing him from the doctoral program, based on his failure to meet the dissertation requirement within six years of achieving candidacy as required by departmental guidelines.

The district court held that Vigil did not carry his summary judgment burden on either his procedural due process claim or his First Amendment retaliation claim. The court found that the record lacked any genuine dispute that Vigil received adequate notice "of his committee's dissatisfaction with his dissertation draft and belief it was not defense ready," and that the decision to dismiss him from the program was "'careful and deliberate' based on the committee members' comments and the graduate school's requirement that candidates complete their dissertation within six years of achieving candidacy." 980 F. Supp. 2d at 803 (footnote omitted) (citing *Ku v. Tenn.*, 322 F.3d 431, 436 (6th Cir. 2003) ("[W]hen the student has been fully informed of the faculty's dissatisfaction with the student's academic progress and when the decision to dismiss was careful and deliberate, the Fourteenth Amendment's procedural due

process requirement has been met.")). As to Vigil's First Amendment retaliation claim, the district court held that Vigil presented no allegations, much less factual disputes, that could establish a connection between his constitutionally protected speech and Defendants' decision to dismiss him from the program pursuant to department policy. *Id.*

We have thoroughly reviewed the record, the applicable law, and the parties' arguments, and we discern no error in the district court's conclusions. We therefore hold that the district court correctly concluded that Vigil failed to establish a genuine dispute of material fact that would permit his procedural due process and First Amendment retaliation claims to go to a jury. We **AFFIRM** on the basis of the district court's September 30, 2013 opinion. *See* 980 F. Supp. 2d 790.